FILED'08 DEC 19 09:43USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHURCH OF THE HOLY LIGHT OF
THE QUEEN, et al.,

        CV 08-3095-PA

    Plaintiffs,

v.        **ORDER**

MICHAEL B. MUKASEY, et al,

    Defendants.

**PANNER, J.**

    Plaintiffs Church of the Holy Light of the Queen (the Church), Jonathan Goldman, Jacquelyn Prestidge, Mary Row, Miriam Ramsey, Alexandra Bliss Yeager, and Scott Ferguson bring this action for declaratory and injunctive relief against Michael Mukasey, Attorney General; Karen Immergut, United States Attorney for the District of Oregon; and Henry M. Paulson, Secretary of the Department of the Treasury. Plaintiffs seek relief under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4, and the Fifth Amendment's Equal Protection Clause.

    Defendants move to dismiss. I deny the motion.

1 - ORDER

**STANDARDS**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Motions under Rule 12(b)(1) "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). Plaintiffs have the burden of establishing subject matter jurisdiction. Id. At this stage of the case, I accept plaintiffs' version of events as true. See Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1160 (9th Cir. 2007) (citing Mattel, Inc. v. Greiner and Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003) (when ruling on Rule 12(b)(1) motion, court must resolve "conflicts between the facts contained in declarations submitted by the two sides" in plaintiff's favor)).

**BACKGROUND**

The Church, based in Ashland, Oregon, has been a branch of the Centro Eclectico da Fluente Luz Universal Raimundo Irineu Serra (the Santo Daime Church) since 1993. The Santo Daime Church, which originated in Brazil, blends Christian and Amazonian tribal beliefs. The ritual drinking of the sacramental Daime Tea, also known as ayahuasca or hoasca, is central to the Santo Daime religion. "The Holy Daime Tea is not simply the sacrament, but embodies the Divine and is itself considered and prayed to as the Diety." Pltfs' Trial Br. 2.

Daime Tea is brewed in Brazil from two plants native to the Amazon rainforest. "One of the plants, *[P]sychotria*

2 - ORDER

*viridis*, contains dimethyltryptamine (DMT), a hallucinogen whose effects are enhanced by alkaloids from the other plant, *[B]anisteriopsis caapi*." <u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418, 425 (2006) (<u>UDV</u> III). DMT is listed in Schedule I of the Controlled Substances Act, 21 U.S.C. § 812(c). <u>See</u> <u>id.</u>

Plaintiff Jonathan Goldman is the Church's spiritual leader, or Padrinho. The Church is registered as a non-profit religious organization with the State of Oregon and the IRS. The other individual plaintiffs are Oregon residents who belong to the Church.

In May 1999, agents from the federal DEA and U.S. Customs intercepted a shipment of Daime Tea sent to Goldman from the Santo Daime Church in Brazil. After making a "controlled delivery" to Goldman's house, the armed agents handcuffed Goldman while they searched his house. Goldman spent twelve hours in jail but was not charged with a crime. The statute of limitations for any charges stemming from the 1999 arrest expired in May 2004.

Goldman states that a few months after his arrest, a federal prosecutor (presumably an assistant United States Attorney (AUSA)), told him, "as long as I don't hear about you conducting ceremonies, I'll leave you alone." Goldman Am. Stmt. 28. Goldman also states that the AUSA warned him "that if he ever heard that we were bringing in the tea or holding ceremonies, 'I'm going to come get you.'" <u>Id.</u> at 14. Communications between plaintiffs and Department of Justice lawyers eventually resulted in a 2001 letter from an Assistant

3 - ORDER

Attorney General stating that banning the importation, distribution, and possession of the Daime Tea was the least restrictive means to further a compelling government interest.

Goldman states that the Oregon Pharmacy Board granted the Church's petition seeking permission to use the tea exclusively during Church ceremonies. The Board found that the Church's use of the tea was not the abuse of a controlled substance.

Shortly after Goldman's May 1999 arrest, government agents intercepted a shipment of tea intended for a sister church in New Mexico, O Centro Espirita Beneficente Uniao Do Vegetal (UDV). Since 2000, UDV has been seeking to prevent the federal government from using the CSA to ban the use of the tea. See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (UDV III) (affirming district court's preliminary injunction prohibiting government from enforcing Controlled Substances Act against UDV's use of Daime Tea). The district court there has not ruled on the merits of the plaintiffs' claims.

Goldman states that many Church members, particularly teachers, doctors, and lawyers, have left the Church because they were afraid of legal or professional repercussions. Similarly, most Church members refused to be named as plaintiffs in this action for fear of reprisals.

## DISCUSSION

Defendants contend that plaintiffs have not shown that this court has jurisdiction to hear their claims. To bring an action in federal court, a plaintiff must have standing "because federal 'judicial Power' is limited to 'cases' and

4 - ORDER

'Controversies.'" Snake River Farmers' Assoc., Inc. v. Dep't of Labor, 9 F.3d 792, 795 (9th Cir. 1993) (quoting U.S. Const. Art. III, § 2; citation omitted). A federal court cannot decide a case "unless the plaintiff has suffered an injury in fact, traceable to the challenged action, and likely to be redressed by a favorable decision." Id.

Here, defendants contend that plaintiffs have not shown a sufficient injury in fact. An injury in fact is "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Lee v. State of Oregon, 107 F.3d 1382, 1387 (9th Cir. 1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). However, "a plaintiff 'does not have to await the consummation of threatened injury to obtain preventive relief.' It is sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." LSO, Ltd. v. Stroh, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (citations omitted).

Here, plaintiffs are under the credible threat of criminal prosecution for engaging in a ceremony that is central to their religious beliefs. That is sufficient to show an injury in fact.

Defendants also argue that plaintiffs' claims are not ripe for judicial review. A claim is not ripe if it depends on possible future events that may never occur. Barapind v. Reno, 225 F.3d 1100, 1114 (9th Cir. 2000).

5 - ORDER

In considering a "preenforcement challenge" such as plaintiffs' claims here, "the constitutional ripeness inquiry focuses on '(1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.'" Alaska Right to Life Political Action Committee v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007) (quoting Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003) (internal quotation marks omitted). The court must also consider "prudential ripeness," which "involves 'two overarching considerations: the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration.'" Id. (quoting Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1141 (9th Cir. 2000) (en banc) (internal quotation marks omitted)).

For the same reasons that plaintiffs have shown an injury in fact, they have also shown that their claims are ripe for judicial review. See Thomas, 220 F.3d at 1139 (analysis for ripeness and standing often overlap). Turning to prudential ripeness, I conclude that regardless of the outcome, a ruling on the merits will relieve plaintiffs of their current uncertainty over the legal status of their religious practices. With the upcoming trial, the issues will be fully presented and ready for judicial review.

Defendants next contend that plaintiffs' claims should be dismissed because plaintiffs failed to exhaust administrative

6 - ORDER

remedies by seeking an exemption under the Controlled Substances Act (CSA). However, as defendants admit, the CSA does not require exhaustion of administrative remedies. Nor does RFRA require exhaustion. Cf. Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (under statute covering religous rights claims brought by prisoners, prisoners are required to exhaust their administrative remedies) (citing 42 U.S.C. § 2000cc-2(e)).

Defendants argue that judicial review would be furthered by the development of an administrative record. However, the record here, combined with testimony at trial, will be more than sufficient. I see no advantage to delaying resolution of plaintiffs' claims.

## CONCLUSION

Defendants' motion to dismiss (#20) is denied.

IT IS SO ORDERED.

DATED this __19__ day of December, 2008.

OWEN M. PANNER
U.S. DISTRICT JUDGE

7 - ORDER

Alaska Right to Life Political Action Committee v. Feldman
504 F.3d 840
C.A.9 (Alaska),2007.
Article III of the Constitution "requires proof (1) that the plaintiff suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) of a causal connection between that injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury." <u>Alaska Right to Life Political Action Committee v. Feldman</u>, 504 F.3d 840, 848 (9th Cir. 2007) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).


RFRA provides that:

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person -

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(b).FN7
STANDING


=======================
FN12. State prison officials make the first judgment about whether to provide a particular accommodation, for a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies. See 42 U.S.C. § 2000cc-2(e) (nothing in RLUIPA "shall be construed to amend or repeal the Prison Litigation Reform Act of 1995"); § 1997e(a) (requiring exhaustion of administrative remedies).
<u>Cutter v. Wilkinson</u>, 544 U.S. 709, 723 n.12 (2005).

**I. Ripeness**
   **A. Standards**
    Ripeness is "'a question of timing.'" <u>Bonnichsen v. United States</u>, 969 F. Supp. 614, 619 (D. Or. 1997) (quoting <u>Regional Rail Reorganization Act Cases</u>, 419 U.S. 102, 140 (1974)). The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148 (1967).
    In determining ripeness, the court should consider constitutional and prudential factors. See <u>Thomas v. Anchorage Equal Rights Comm'n</u>, 220 F.3d 1134, 1138 (9th Cir. 2000) (en

8 - ORDER

banc), cert. denied, 121 S. Ct. 1078 (2001). The court's constitutional inquiry looks to whether the issues are "'definite and concrete,'" or "'hypothetical or abstract.'" Id. at 1139 (quoting Railway Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945)). The court's prudential inquiry focuses on "'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Id. at 1141 (quoting Abbott Labs., 387 U.S. at 149). The party asserting jurisdiction bears the burden of establishing it. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

    B. Discussion

A claim is not ripe if it depends on possible future events that may never occur. Barapind v. Reno, 225 F.3d 1100, 1114 (9th Cir. 2000). Cf. Association of American Medical Colleges v. United States, 217 F.3d 770, 783-84 (9th Cir. 2000) (noting exception to ripeness doctrine when challenged government action forces the plaintiff to make a "Hobson's choice").

II. Standing

    A. Standards

The analysis for ripeness and standing often overlap. See Thomas, 220 F.3d at 1139. To establish standing, plaintiffs must show that they have suffered an injury in fact because of defendants' conduct, and that the injury would be redressed by a decision in their favor. See On the Green Apartments L.L.C. v. City of Tacoma, 241 F.3d 1235, 1239 (9th Cir. 2001). An injury in fact is "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Lee v. State of Oregon, 107 F.3d 1382, 1387 (9th Cir. 1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Plaintiffs must also satisfy "the prudential component of standing; that is, [their] 'complaint must "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."'" On the Green Apartments, 241 F.3d at 1239 (citations omitted).